IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 21-cv-1432<br>) |
| CHAD EILMAN, et al. | )<br>)<br>) |
| Defendants. | )<br>) |

**STIPULATION AND ORDER REGARDING DISCOVERY**

Under Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff the United States of America and Defendants Chad Eilman, Jeffrey Eilman, and Christine Neigum (each a "Party" and collectively, the "Parties") have entered into this Stipulation to reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"), and to govern discovery obligations in this action. The Parties agree that unless otherwise stipulated by the Parties or ordered by the Court, discovery must proceed in accordance with the Federal Rules of Civil Procedure.

**I.    PRESERVATION AND PRODUCTION OF DOCUMENTS**

    **A.    Preservation**

        1.    The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2. This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

**B. Limitations on Obligation to Preserve and Produce**:

Subject to § I.D.1, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

    a. Delivery or read receipts of e-mail;

    b. Logs or other data from video-conferencing (including, *e.g.*, Skype or Zoom) or instant messaging tools involving: (i) attorneys for the United States (and their staff); (ii) attorneys for Defendant(s) in this case (and their staff); and/or attorneys for the United States (and their staff) and attorneys for the United States Department of Housing and Urban Development (and their staff).

    c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

    d. Internally facing server system logs;

    e. Externally facing or hosted file sharing system logs;

    f. System data from photocopiers or fax machines;

    g. Auto-saved copies of electronic documents;

    h. Deleted, slack, fragmented, or other data only accessible by forensics; and

    i. Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

j.  Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (i) attorneys for the United States (and their staff) and/or (ii) attorneys for Defendant(s) in this case (and their staff);

k.  Voicemail messages on the voicemail systems of (i) attorneys for the United States (and their staff); (ii) attorneys for Defendant(s) in this case (and their staff); and/or attorneys for the United States Department of Housing and Urban Development (and their staff).

2.  When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

a.  ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

b.  ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that

---

[1] "Duplicates" in the context of ESI are copies of identical documents identified with matching MD-5 hashes, which is a mathematically-calculated 128 bit value used to create a unique identifier for an electronic file.

3

Case 2:21-cv-01432-WED   Filed 02/03/22   Page 3 of 11   Document 17

relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

3. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged *solely among*: 1) attorneys for the United States (and their staff); 2) attorneys for Defendants (and their staff); and/or 3) attorneys for the United States (and their staff) and attorneys for the Department of Housing and Urban Development (and their staff).

4. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § I.B.1-3 above. As provided in § I.D.1 below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

C. **Identification & Production of Documents, Things and ESI**

1. Production Format

    a. ESI and hard copy documents must be produced as specified herein.

    b. Except as provided in § I.C.1.g below for specific types of documents and data, ESI shall be produced in its native form and must not be converted to another format (*e.g.*, PDF). ESI must be collected and produced in a way that preserves existing metadata.

4

c. Paper documents must be scanned at 300 d.p.i. and produced as searchable PDFs, unitized as one document per PDF except as provided in § I.C.1.g below for specific types of documents and data.

d. PDFs shall be black-and-white, unless a black-and-white format would obscure or degrade information (*e.g.*, color-coded graphs or charts, printed photographs, or redlines), in which case the Party will produce a color PDF. Nothing in this provision prevents a Party from scanning and producing paper documents as color PDFs, nor does anything in this provision prevent a Party from producing color PDFs if they choose.

e. If a document has been prepared in several copies, or additional copies have been made that are not identical (or are no longer identical by reason of subsequent notation or other modification of any kind whatever), each non-identical copy is a separate document.

f. Except for native files, the United States will produce responsive documents Bates-stamped with a prefix to indicate that the United States is producing the document (*i.e.*, US_____). Except for native files, Defendants will produce responsive documents accompanied by a Bates-stamp schema format, including the prefix to be used for those documents (*i.e.*, Eilman_____). The United States will Bates-stamp the documents and send the documents back to the Defendants. For native files, which cannot be Bates-stamped, the Parties will produce the native files with the original file name as well as a spreadsheet index that, for each native file, includes the original file name, production path, and an assigned sequential document identification number.

5

g. Specifications for Specific File Types:

    i. Emails will be produced as native files in .msg or .pst format. As an alternative, the Parties may also produce the emails in PDF format. The Parties agree to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails.

    ii. Text messages will be produced as screen shot images in JPEG format, but may also be produced in PDF format if a JPEG version is unavailable. A text message conversation will be produced as a single file.

    iii. Audio files and video files should be produced as native files, unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player.

    iv. Excel or other types of spreadsheets shall be produced as native files with all cells unlocked.

    v. PowerPoint files should be produced as native files with all notes unaltered and viewable for each file.

    vi. Social media content (including comments, "likes," sharing, and other interactions with the post(s)) shall be produced as PDFs, including information about the participants and the date / time of the communications.

6

Case 2:21-cv-01432-WED   Filed 02/03/22   Page 6 of 11   Document 17

vii. For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the parties will meet-and-confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents.

2. Production Specifications

   a. Responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, in accordance to the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties. In the case of documents and ESI produced by the United States, responsive information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS).

   b. Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

   c. If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

   d. The parties agree to remove all encryption or password protection for all ESI produced. In the alternative, the parties agree to provide passwords or assistance needed to open encrypted files.

7

**D.     Privileged Documents, Things and ESI**

1. If any discovery request appears to call for the production of documents, things or ESI covered by § I.B, the responding party is not required to produce or identify such information on a privilege log. However, if a party preserves relevant documents, things, or ESI covered by § I.B, in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

2. <u>Inadvertent Disclosure of Privileged or Protected Information</u>

    a. The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, common interest privilege, doctor-patient privilege, and/or applicable governmental privileges (such as deliberative process) does not operate as a subject matter waiver in this case if: 1) the disclosure is inadvertent; 2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and 3) the holder promptly took reasonable steps to rectify the error.

    b. If the producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving party within 14 days of discovery of disclosure and provide the production date, number, and volume of the disc or drive on which the production was produced ("production media"), and the Bates number(s) or Document ID (for native files) of all material that it believes contains the inadvertently disclosed information.

c. If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will promptly notify the producing Party and provide the Bates number(s) or Document ID (for native files) of the item it believes was inadvertently produced. Within 14 days after receiving notification, the producing Party may make a written request for return of the material. If the producing Party does not send a written request for return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d. When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing party. If copies of inadvertently produced materials are located or stored on the receiving Party's Backup System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures.

e. If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

9

      f.        If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

    **E.**    **Costs of Document Production**

Each Party shall bear the costs of producing its own documents, things, and ESI.

**II.**    **MISCELLANEOUS**

    A.    The Stipulation may be executed in counterparts.

    B.    The terms of this Stipulation and Order are not exhaustive. Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

    C.    None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

**IT IS SO ORDERED.**

Dated at Milwaukee, Wisconsin this 3rd day of February, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

Agreed to by counsel for the Parties:

On January 18, 2022, for the United States:

<table>
<tr><td>

*/s/ Chris R. Larsen*
CHRIS R. LARSEN
Assistant United States Attorney
Eastern District of Wisconsin
Wisconsin State Bar No. 1005336
517 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 297-1701
Fax: (414) 297-4394
chris.larsen@usdoj.gov

</td><td>

*/s/ Arielle R.L. Reid*
ARIELLE R.L. REID
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
North Carolina State Bar No. 56143
950 Pennsylvania Avenue, NW
Washington, DC 20530
Phone: (202) 598-1575
Fax: (202) 514-1116
arielle.reid@usdoj.gov

</td></tr>
</table>

On January 18, 2022, for the Defendants:

RATZEL & ASSOCIATES, LLC
Attorneys for Defendants, Defendants Chad Eilman, Jeffrey Eilman, and Christine Neigum

*/s/ electronically signed by James C. Ratzel*
James C. Ratzel
State Bar No. 1007708
Herschel B. Brodkey
State Bar No. 1117719

P.O. ADDRESS:
3330 North Springdale Road
Brookfield, Wisconsin 53045
T: 262-781-1911
F: 262-781-0429
jratzel@ratzel-law.com