# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAD EILMAN, JEFFREY EILMAN,<br>and CHRISTINE NEIGUM,<br><br>Defendants. | Case No. 21-CV-1432-JPS<br><br><br>**ORDER** |

This Fair Housing Act case was recently reassigned to this branch of the Court. ECF No. 46. Fully briefed and before the Court for disposition are (1) Defendants Chad Eilman, Jeffrey Eilman, and Christine Neigum's ("Defendants") motion to compel an independent psychological examination of Angela McLean ("McLean"), upon whose behalf Plaintiff United States of America ("Plaintiff") proceeds in this action, ECF No. 28; and (2) Defendants' motion to compel an independent examination of McLean's five-pound chihuahua, Roxy, ECF No. 31. For the reasons set forth below, the Court grants both motions. Simultaneously with the entry of this Order, the Court will enter its Pretrial Order and schedule this action for a counsel-only status conference.

1.  **LEGAL STANDARD**

    The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant in a discovery context if it is relevant

to the subject matter of the litigation as Rule 26(b)(1) states, not just the particular issues presented in the pleadings." *Eggleston v. Chi. Journeyman Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 903 (7th Cir. 1981).

Under Rule 35, "[a] court may order a party whose mental condition is in controversy to submit to a mental examination upon a motion for good cause." *Rose v. Cahee*, No. 09-CV-142-JPS, 2009 WL 3756985, at *1 (E.D. Wis. Nov. 9, 2009) (citing Fed. R. Civ. P. 35(a)(1)). "To obtain a Rule 35 examination, a party seeking such examination must show that each condition for which the examination is sought is 'genuinely in controversy' and that 'good cause exists for ordering the examination.'" *Killebrew v. Jackson*, No. 09-CV-265-JPS, 2010 WL 2102641, at *1 (E.D. Wis. May 21, 2010) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964)).

Under Rule 34, "a party may serve another with a request to produce or permit the party to inspect a document or thing 'in the responding party's possession, custody, or control.'" *Black v. Friedrichsen*, No. 119CV00307WCLSLC, 2021 WL 164797, at *2 (N.D. Ind. Jan. 19, 2021). "Such requests must be within the scope of discovery permitted by Federal Rule 26(b)—that is—it must be relevant to a party's claim or defense and proportional to the needs of the case." *Id.*

2.  **RELEVANT FACTS**

Plaintiff brings this Fair Housing Act case on behalf of McLean. ECF No. 4. Plaintiff alleges that, at all relevant times, Defendants co-owned the Sleepy Hollow Apartments in Oconomowoc, Wisconsin ("Sleepy Hollow"). *Id.* at 2. McLean has "anxiety, depression, schizoaffective disorder, and post-traumatic stress disorder." *Id.* She became entitled to receive social security disability benefits and long-term disability benefits in September 2019. *Id.* at 2–3. On November 2019, McLean's psychologist, Dr. David

Radovich ("Dr. Radovich") prescribed her an assistance animal. *Id.* at 3. Shortly thereafter, McLean adopted Roxy. *Id.* at 3. Among other benefits Roxy provides, McLean trained Roxy to bark when approached by strangers, which alleviates McLean's symptoms. *Id.*

In June 2020, McLean began searching for a less expensive apartment. *Id.* at 4. She found an advertisement for an open apartment in Sleepy Hollow. *Id.* She arranged a meeting with Defendant Chad Eilman ("Chad") the same day. *Id.* Chad showed McLean two available apartments: a second-floor and a ground-floor unit. *Id.* During the meeting, McLean told Chad about Roxy, and that Roxy is an assistance animal. *Id.* She showed Chad the letter from Dr. Radovich with the prescription for an assistance animal. *Id.* Chad responded that dogs are not allowed at Sleepy Hollow. *Id.*

After the meeting, Chad discussed McLean's application with his brother, Defendant Jeffrey Eilman ("Jeffrey"). *Id.* Thereafter, Chad called McLean and suggested she may be able to keep Roxy if she rented an apartment, and offered her the ground-floor unit. *Id.* McLean agreed to rent the unit, and was financially and otherwise qualified to rent. *Id.* The next day, McLean texted Chad that she had bought Roxy a bright red vest that says "Support Dog" on both sides, so people will be aware of Roxy's purpose. *Id.* at 5. Chad responded that he had a meeting scheduled with the other owners and would let McLean know afterwards whether she may rent the apartment. *Id.* A few days later, Chad told McLean her application was preliminarily approved and deposited her security deposit. *Id.*

The same day he deposited the security deposit, Chad emailed McLean her lease and told her finalization was dependent on meeting Roxy. *Id.* Three days later, on June 25, 2020, McLean met Chad at the ground-floor unit to take measurements and to introduce Roxy. *Id.* at 6. Roxy barked

during the meeting when approached by strangers, but quieted in response to McLean's commands. *Id.* McLean explained Roxy's bark training to Chad. *Id.* Roxy presented no threat or danger during the meeting. *Id.* During the meeting, Chad told McLean he was concerned about other tenants seeing Roxy, and explained that he could evict her if Roxy barked in the apartment. *Id.*

McLean made several offers to alleviate Chad's concerns. *Id.* She said she would be home with Roxy most of the time and would put a bark-suppressing collar on Roxy when she left. *Id.* She also offered to have Roxy professionally trained to minimize any disruptive barking, and to drive to different neighborhoods to minimize contact between Roxy and other tenants. *Id.* She also said Roxy would always wear her vest when outside. *Id.* After the meeting, McLean contacted a dog trainer and enrolled Roxy in a training course. *Id.*

The next day, McLean emailed Chad and asked him to hold the apartment for her while Roxy completed professional training. *Id.* at 7. McLean budgeted two months for the training. *Id.* The same day, Chad responded to inform McLean that after discussing with the other owners, they were unable to complete the leasing process at that time. *Id.* McLean responded that the trainer guaranteed results in a few weeks. *Id.* Chad told her she could reapply then if there were vacancies, but that "as things are right now, the barking is a noise issue that WILL draw complaints." *Id.* The same day, Chad rented the apartment to a current resident's mother, who does not have a disability or an assistance animal. *Id.* at 8.

McLean alleges "economic harm, emotional distress, and other harm" as a result, but Plaintiff brings claims only for violations of the Fair Housing Act *Id.* at 8–11. In addition to injunctive and other relief, Plaintiff

seeks an award of monetary damages to McLean pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1).

3. ANALYSIS

   3.1 Rule 35 – Independent Psychological Examination of McLean

Plaintiff argues that Defendants' motion to compel an independent psychological examination of McLean under Rule 35 should be denied because (1) McLean's mental condition is not in controversy for purposes of evaluating her emotional distress claim because the alleged damages are only garden variety; and (2) Defendants have not shown good cause to subject McLean to a Rule 35 examination. ECF No. 36. The Court finds neither argument persuasive.

McLean has unquestionably placed her mental condition in controversy as to the underlying conditions that she alleges caused her disabilit(ies) and necessitated her prescription for an assistance animal. *See Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010) (waiver of psychotherapist-patient privilege applies where plaintiff "affirmatively claims a 'disability' involving mental health").

By alleging that Defendants' conduct caused her emotional distress and seeking monetary damages therefor, McLean also put her resultant emotional and/or medical conditions, as well as causation, at issue. *See United States v. Balistreri*, 981 F.2d 916, 928 (7th Cir. 1992) (actual damages recoverable under 42 U.S.C. § 3613(c)(1) "include[s] compensatory damages for injuries such as emotional distress").

The Seventh Circuit has implicitly rejected the "garden variety" argument Plaintiff raises. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places

his or her psychological state in issue, the defendant is entitled to discovery any records of that state."). District courts within the Seventh Circuit, courts outside the Seventh Circuit, and commentators all agree that the *Oberweis* opinion employed this language for a reason, thereby rejecting the "middle-of-the-line" garden variety approach, which puzzlingly "allows plaintiffs to seek damages, albeit smaller damages, for emotional distress without waiving the psychotherapist-privilege." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514–16 (7th Cir. 2018).

The garden variety approach is unsound because it requires courts to draw a line between how much money is "too much" such that damages go beyond garden variety, and to draw a line between different symptoms of emotional distress to determine what is and is not garden variety. *Id.* The Court is hard pressed to conceive of a more malleable and unclear standard. Even if the Court were to accept the garden variety argument, Plaintiff's discovery responses list, among others, depression and sleeplessness, which some courts—again, left to apply a hopelessly squishy standard— have held to be more than garden variety. *Id.* (citing *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 553 (S.D. Ohio 2014)).

The parties brief the applicability of a variety of factors where, if present, a Rule 35 examination is permitted even where only garden variety emotional distress damages are claimed. ECF No. 36 at 6 (citing *Kuminka v. Atl. Cnty. N.J.*, 551 F. App'x 27, 29 (3d Cir. 2014)); ECF No. 43 at 2 (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)) (both listing five factors: (1) a cause of action for emotional distress, (2) an allegation of specific injury or disorder, (3) a claim of unusually severe emotional distress, (4) an offer of expert testimony to support a claim of emotional distress, and (5) plaintiff's concession that mental condition is in

controversy). Because the Court concludes that the garden variety analysis is inapplicable in the Seventh Circuit, it need not analyze these factors. *See, e.g.*, *Laudicina*, 328 F.R.D. at 514–16.

Even if the Court did analyze them, however, several of the factors are present here. At a minimum, Plaintiff lists specific mental disorders and/or symptoms attributed to the resultant emotional distress in the discovery responses. And, as Defendants note, Plaintiff has not disavowed reliance on experts, despite labeling Dr. Radovich as a non-retained expert. Plaintiff argues that it does not intend to elicit specific testimony from Dr. Radovich regarding McLean's resultant emotional distress, but that does not mean that such testimony will definitively not be given. More importantly, those courts that do apply the garden variety analysis and the applicable five factors have concluded that non-retained experts' testimony regarding mental health supports compulsion of a Rule 35 exam. *See Ruvane v. Elizabeth F, Inc.*, No. 15-CV-79, 2016 WL 6514181, at *6 n.73 (D. Alaska Aug. 25, 2016) (collecting cases).

Defendants have also shown good cause for a Rule 35 examination of McLean. Plaintiff contends that Defendants have not exhausted other means of discovery, particularly upcoming depositions of, among others, Dr. Radovich. ECF No. 36 at 9. Additionally, Plaintiff argues that it has submitted ample medical records sufficient for evaluation. *Id.* As this Court has previously held, once a mental condition is placed in controversy, the opposing side is entitled to "pursue a psychological examination to determine the extent and nature of" the condition. *Rose*, 2009 WL 3756985, at *2. "This is true despite [the respondent's] argument[] that . . . the [movant] already [has] access to her mental health records." *Id.* As in *Rose*, Defendants raise several reasons why the records may be insufficient to

Page 7 of 12
Case 2:21-cv-01432-JPS   Filed 04/11/23   Page 7 of 12   Document 47

determine the extent of McLean's conditions including that she attended her deposition without Roxy, that her medical records show disagreement in diagnoses between her psychiatrist and Dr. Radovich, and that the records produced were compiled and selected by Plaintiff. ECF No. 43. Moreover, courts within this Circuit have held that a treating physician may not be in a position "to testify on a fully informed basis as to the precise causation of the claimed emotional distress," thus necessitating an independent examination. *Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 411 (N.D. Ill. 1994).

Therefore, for all these reasons, the motion will be granted. The parties shall meet-and-confer on a date and reasonable length of time for the Rule 35 examination. The parties shall also meet and confer on the scope and methods of the Rule 35 examination, keeping in mind the Court's holdings in this Order. *See Haymer v. Countrywide Bank, FSB*, 2013 WL 657662, at *5 (N.D. Ill. Feb. 22, 2013) (ordering parties to meet and confer on mutually convenient date, time, place, level of intrusiveness, and scope of Rule 35 examination). Any Rule 35 examination must be completed within **forty-five (45) days** of this Order.

### 3.2 Rule 34 – Independent Examination of Roxy

Plaintiff argues that an inspection of Roxy is neither relevant nor proportional under Rule 26. ECF No. 38. Specifically, Plaintiff contends that Defendants' proffered examiner—an animal behaviorist—would not be able to offer relevant evidence regarding whether Roxy is an emotional support animal, or a reasonable and necessary accommodation. *Id.* at 4, 5. To the extent Defendants seek to examine Roxy to determine whether she poses a direct threat to the health and safety of others, Plaintiff avers that "there is zero indication in the voluminous discovery that Roxy's behavior

is in any way a threat or danger to others." *Id.* at 7–8 (citing 42 U.S.C. § 3604(f)(9) (providing that "nothing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health and safety of other individuals")). As with the motion regarding McLean, neither of these arguments is persuasive.

Implicit in the Fair Housing Act "is the understanding that while reasonable accommodations to achieve necessary ends are required, some accommodations may not be reasonable under the circumstances and some may not be necessary to the laudable goal of inclusion." *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995). "The requirement of reasonable accommodation does not entail an obligation to do everything humanly possible to accommodate a disabled person; cost (to the defendant) and benefit (to the plaintiff) merit consideration as well." *Id.*; *see also Castillo Condo. Ass'n v. U.S. Dep't of Hous. & Urb. Dev.*, 821 F.3d 92, 98 (1st Cir. 2016) (required elements of unlawful discrimination based on failure to make a reasonable accommodation include, among others, "that [the plaintiff's] emotional support dog was reasonable and necessary," and that the defendant "nonetheless refused to provide a reasonable accommodation"). Thus, the inquiry is a highly specific question of fact.

Refusal to make a reasonable accommodation when such accommodation was necessary is one of Plaintiff's claims in this action. ECF No. 4 at 10. With respect to relevance, Defendants wish to inspect Roxy for several reasons. First, Defendants seek to determine whether Roxy is a reasonable and necessary accommodation. ECF No. 44 at 1. McLean did not bring Roxy to her deposition, and there are factual disputes as to Roxy's disposition and tendencies in this case. *Id.* at 2. For example, McLean

testified that she requires Roxy for security, but did not bring her to the first few meetings with Chad; Chad's narrative of Roxy is different from McLean's; and McLean puts a bark collar on Roxy despite requiring Roxy's barks to alleviate McLean's symptoms. *Id.* at 2–5. Second, Defendants seek to examine how Roxy's own diagnosis of generalized anxiety, as demonstrated in veterinarian records, affect her characteristics as a service animal, through the use of an animal behaviorist. *Id.* at 6. Third, they seek to examine the likelihood that Roxy would pose a direct threat to the health and safety of others, ECF No. 44 at 7, which Plaintiff concedes is their burden to prove, ECF No. 38 at 7.

Plaintiff relies on *United States v. Barber*, where the court denied an independent examination of a service dog in a Fair Housing Act case because the examination sought to "determine to what extent [the dog] is in fact trained," on the grounds that training is irrelevant to whether an animal is qualified as a service animal. No. 13-CV-5539, 2014 WL 4924404, at *1 (W.D. Wash. Sept. 30, 2014). But Defendants do not list training as one of the reasons they wish to examine Roxy; if they did, that request would be denied on relevance grounds. Instead, they seek to determine whether Roxy alleviates McLean's disabilities, which includes an analysis into Roxy's own anxiety. *See Ass'n of Apartment Owners of Liliuokalani Gardens at Waikiki v. Taylor*, 892 F. Supp. 2d 1268, 1287 (D. Haw. 2012) (explaining examinations first of plaintiff's claimed disability and then of service animal are necessary to assess whether "the animal . . . alleviate[s] the disability"). Plaintiff's argument that an animal behaviorist cannot make these assessments places the cart before the horse. If it turns out from the report that this is true, Plaintiff is free to argue for exclusion of the report or testimony from the behaviorist in appropriate pretrial motions.

Finally, the fact that discovery has not revealed any aggressive tendencies in Roxy is not dispositive in preventing an examination. Determining whether a service dog poses a threat that cannot be mitigated by a reasonable accommodation is a question of fact. *Chavez v. Aber*, 122 F. Supp. 3d 581, 597 (W.D. Tex. 2015). An evaluation from a "canine behaviorist" into the mannerisms of a service dog is admissible as to those facts. *Id.* ("[A] 'canine behaviorist' concluded that Chato exhibited a calm manner that is indicative of a dog with no aggression, fear or lack of socialization issues. Accordingly, the Court finds that Plaintiffs have alleged sufficient facts that Chato did not pose a direct threat.") (internal citations omitted). The fact that the behaviorist will evaluate Roxy now, as opposed to in 2020 when these events took place, goes to credibility and weight of the evidence, not its inability to be collected. For all these reasons, the motion will be granted.

To assuage Plaintiff's concerns regarding Roxy's behavior in an unfamiliar environment, the Court will require that the Rule 34 examination be conducted in McLean's home, or in an area with which Roxy is otherwise familiar. Otherwise, as with the examination of McLean, the parties must meet and confer as to a reasonable date, time, scope, and methodology, and the examination must be concluded within **forty-five (45) days** of this Order.

4. **CONCLUSION**

The Court grants Defendants' motion to compel a Rule 35 independent psychological examination of McLean and Defendants' motion to compel a Rule 34 independent examination of Roxy, in accordance with the terms of this Order. As noted earlier, the Court will

simultaneously enter its Pretrial Order and schedule this matter for a counsel-only status conference.

Accordingly,

**IT IS ORDERED** that Defendants' motion to compel a Federal Rule of Civil Procedure 35 independent psychological examination of Angela McLean, ECF No. 28, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motion to compel a Federal Rule of Civil Procedure 34 independent examination of Angela McLean's dog, ECF No. 31, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that as set forth in greater detail above, the parties meet and confer on the date, time, scope, and methods for such examinations; any Federal Rule of Civil Procedure 35 independent psychological examination of Angela McLean and Federal Rule of Civil Procedure 34 independent examination of Angela McLean's dog must be completed within **forty-five (45) days** of this Order.

Dated at Milwaukee, Wisconsin, this 11th day of April, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

Page 12 of 12
Case 2:21-cv-01432-JPS   Filed 04/11/23   Page 12 of 12   Document 47